IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TALIA HALFORD,

      Plaintiff,

v.                                            Case No. 1:13-cv-0805-KG-CG

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative for Rehearing, with Supporting Memorandum* (the "Motion"), filed on May 19, 2014, (Doc. 17); Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand for Rehearing* ("Response"), filed on July 21, 2014, (Doc. 19); and Plaintiff's *Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand for Rehearing* ("Reply"), filed on July 31, 2014, (Doc. 20). This case was referred to this Court by U.S. District Judge Kenneth Gonzales, to make findings of fact and recommend an ultimate disposition. (Doc. 24).

On May 12, 2011, Talia R. Halford filed applications for disability insurance benefits and supplemental security income, alleging disability beginning November 2, 1999.[1] (Administrative Record ("AR") 166–76, 177–78). Her applications were initially

---

[1] Ms. Halford's claim for disability insurance is for the closed period beginning on November 2, 1999, and extending through December 31, 2002, which was the last day that she was insured for disability insurance benefits. (AR 12, 199, 225). Ms. Halford's claim of supplemental security insurance is for the period beginning on the date the application was filed, or May 12, 2011. *See* 20 C.F.R. § 416.335. To qualify for supplemental security income, Ms. Halford must show that she had a disabling condition

denied on October 28, 2011, (AR 60, 61), and also upon reconsideration on February 9, 2012. (AR 82, 83). Ms. Halford filed a written request for a hearing on March 19, 2012, (AR 122–23); a hearing was held before Administrative Law Judge ("ALJ") Michelle K. Lindsay on October 2, 2012. (AR 23–58). Ms. Halford and Thomas A. Greiner, an impartial vocational expert, testified at the hearing. *Id.*

The ALJ issued her opinion on February 25, 2013, finding that Ms. Halford was not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 10–21). Ms. Halford filed an application for review with the Appeals Council, which was summarily denied on June 26, 2013, (AR 1–5), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Halford complains that the ALJ committed reversible, legal error by: (1) failing to provide sufficiently specific reasons for rejecting the opinions of two of Ms. Halford's treating physicians; (2) rendering a residual functional capacity ("RFC") finding unsupported by substantial evidence and contrary to the law; and (3) discounting her credibility for reasons unsupported by substantial evidence. (Doc. 17). Ms. Halford also requests that the Court reverse the Commissioner's decision and remand the case for an immediate award of benefits. *Id.* at 26.

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to properly explain her reasons for rejecting a probative medical opinion in the record, the Court recommends that the

---

between May 12, 2011 and February 25, 2013, which was the date of the ALJ's decision. *Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991) (citing 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330, 416.335).

Motion be **GRANTED in part** and that this case be **REMANDED** to the Commissioner for further proceedings.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination

of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits ("DIB") and supplemental security income ("SSI"), a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; that (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Ms. Halford initially applied for DIB and SSI alleging disabling back problems, post-traumatic stress disorder ("PTSD"), brain injury, fibromyalgia, the loss of the full use of her limbs, insomnia, and hypothyroidism. (AR 203). At the hearing, she testified that she was unable to work due to her chronic pain which made it impossible for her to stand or sit for prolonged periods; emotional instability; chronic fatigue; frequent headaches; memory problems; and numbness in her legs and feet. (AR 39–43). She alleged that some of these conditions were either caused or exacerbated by an automobile collision that occurred on November 2, 1999. (AR 34–38, 203).

At step one, the ALJ determined that Ms. Halford had not engaged in substantial gainful activity since November 2, 1999. (AR 12). At step two, the ALJ concluded that Ms. Halford was severely impaired by the following medically-determinable impairments: degenerative disc disease of the lumbar, thoracic, and cervical spine; osteoarthritis of the bilateral knees; a pain disorder; and PTSD with panic episodes. *Id*. The ALJ found Ms. Halford's diagnosis of Bell's palsy to be a non-severe impairment because it had resolved and caused no more than minimal limitations in her ability to perform basic work activities. (AR 12–13).

At step three, the ALJ explained that she specifically considered whether Ms. Halford's impairments satisfied or met listings for somatoform disorders (12.07) and

personality disorders (12.08). (AR 13–14). The ALJ determined that while Ms. Halford had mild restrictions in daily living and moderate difficulties in social functioning and concentration, persistence, and pace, she did not satisfy any of the listings for mental disorders. *Id.* The ALJ ultimately found that none of Ms. Halford's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. *Id.*

The ALJ proceeded to step four, and first determined Ms. Halford's RFC. She considered Ms. Halford's subjective complaints and the objective medical evidence in the record, and concluded that her testimony was not credible. (AR 15, 18–19). The ALJ found that Ms. Halford could perform a restricted range of light work, as that term is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that: (i) she could only lift, carry, push, or pull up to 20 pounds at a time occasionally and up to ten pounds frequently; (ii) she could sit for six hours in an eight-hour workday; (iii) she could stand or walk for six hours in an eight-hour workday; (iv) she could only occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl; and (v) she could not climb ladders, ropes, or scaffolds. (AR 14). The ALJ also found that Ms. Halford was able to: (i) understand, remember, and carry out simple instructions; (ii) maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task; and (iii) have only occasional contact with the general public. *Id.* The ALJ also concluded that Ms. Halford was not capable of doing any of her past relevant work. (AR 20).

At step five, the ALJ inquired whether Ms. Halford would be able to perform any other work existing in significant numbers in the national economy. (AR 20–21). The

ALJ found that during the closed period, Ms. Halford was categorized as a "younger individual age 18-49," with a high school education and English-language skills.[3] (AR 55). The vocational expert stated that an individual with Ms. Halford's same age, education, work experience, and RFC could perform the jobs of bakery worker/conveyor line, electronics worker, and fruit distributor, which exist in significant numbers in the national economy. (AR 55–56). After finding the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted his testimony. (AR 21).

The ALJ concluded that because Ms. Halford was capable of performing work existing in significant numbers in the national economy, she was not disabled. (AR 21).

**IV. Analysis**

The ALJ determined that Ms. Halford had the RFC to perform a restricted range of light work. Ms. Halford contends that the ALJ's failure to include additional limitations due to her impairments was legal error, because she did not provide any reasons for discounting the opinions of Christopher Merchant, M.D. and Ralph Luciani, D.O., M.S., M.D.(H). She further argues that the RFC is unsupported by substantial evidence because the ALJ did not consider all of the evidence of disability that was in the record. Lastly, Ms. Halford complains that the ALJ made an improper adverse credibility finding unsupported by substantial evidence.

The Commissioner responds that the ALJ properly discounted the opinions of those physicians, considered all of the evidence related to Ms. Halford's impairments,

---

[3] Ms. Halford was age 21 on the alleged date of disability onset.

assigned to her the limitations that the evidence reasonably supported, and assessed Ms. Halford's subjective complaints pursuant to the proper legal standards.

### A. Medical Opinions of Dr. Merchant and Dr. Luciani

Ms. Halford challenges the ALJ's consideration of Dr. Merchant and Dr. Luciani's medical opinions. Both physicians opined that Ms. Halford lacked the functional capacity to work. These opinions were given very little weight by the ALJ for the sole reason that they "seemed to be based on the subjective reports" of Ms. Halford. (AR 19). Ms. Halford argues that the ALJ's analysis is both legally deficient and not supported by substantial evidence in the record. She contends that the ALJ failed to apply the treating physician rule and provide the necessary reasons to reject their opinions. The Commissioner responds that both doctor's medical opinions were properly weighed and discounted because the ALJ found Ms. Halford to be not credible.

#### 1. An ALJ Must Properly Evaluate a Treating Physician's Medical Opinion

It is undisputed that both Dr. Merchant and Dr. Luciani were Ms. Halford's treating physicians. The Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); *Policy Interpretation Ruling Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. and Psych. Consultants*, Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

The ALJ should accord opinions of treating physicians "controlling weight" when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley*, 373 F.3d at 1119. A treating physician's opinion is accorded "controlling weight" because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Doyal*, 331 F.3d at 762 (quotation omitted).

Even if a treating physician's opinion is not supported by medical evidence or consistent with the record, it may still receive deference. *Policy Interpretation Ruling Titles II & XVI: Giving Controlling Weight to Treating Source Med. Op.*, SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The level of deference the treating physician's opinion receives must be determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c)–(d), 416.927(c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (quotation omitted).

In sum, the ALJ must conduct a sequential, two-step inquiry if she wishes to

accord a treating physician's opinion less than "controlling weight." First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record. Next, she must determine what deference she will grant the opinion after considering the factors listed above, and state sufficiently specific reasons for that determination. Each step in the inquiry is "analytically distinct." *See Krauser v. Astrue*, 638 F.3d 1324, 1330–31 (10th Cir. 2011). Her determination, like all of her findings, must be supported by substantial evidence.

### 2. Dr. Merchant: the ALJ Did Not Follow the Treating Physician Rule

The record shows that Dr. Merchant treated Ms. Halford from July, 2007 through September, 2011. (AR 501–669, 776–79, 935–69). On April 23, 2012, Dr. Merchant assessed Ms. Halford's RFC. (AR 1207–12). Dr. Merchant opined that Ms. Halford could not sit, stand, or walk for any amount of time in an eight-hour workday. (AR 1208). He further found that due to Ms. Halford's cervical cord impingement with moderate level of foraminal stenosis and lumbar spondylosis with bilateral PARS defect, she could never lift or carry any amount of weight, except that she could occasionally carry up to ten pounds. (AR 1208). Dr. Merchant further assigned restrictions on her ability to perform repetitive actions such as grasping, pushing and pulling, and manipulating objects, found that she could never squat, crawl, climb, reach above, or push and pull, and could only occasionally bend, stoop, crouch, kneel, and grasp. (AR 1208–10). Dr. Merchant also determined that Ms. Halford could not use her feet for repetitive movements. (AR 1209). He additionally found that due to Ms. Halford's fibromyalgia, chronic pain, cervical cord impingement, and lumbar spondylosis, she could never be exposed to unprotected heights, moving machinery, marked temperature changes, or

dust, fumes, and gases, and could only occasionally drive automotive equipment. (AR 1210).

Dr. Merchant noted that his conclusions were based on Ms. Halford's x-rays and muscle spasms, which provided objective evidence of Ms. Halford's severe pain. (AR 1210–11). He also attached to his RFC assessment the results of a lumbar spine radiograph of Ms. Halford's back taken on February 17, 2012, which revealed back pain, a prior cholecystectomy, a small area of sclerosis, small marginal ostephytes, and bilateral pars interarticularis defects without spondyloisthesis. (AR 1212).

The ALJ noted in her decision that she was aware of Dr. Merchant's opinion that Ms. Halford is unable to perform even sedentary exertion, and cannot lift any amount of weight, or do any sitting, standing, or walking in a workday. (AR 18, 19). She explained that she would reject Dr. Merchant's opinion for the sole reason that it was based on the subjective reports of Ms. Halford. (AR 19).

The ALJ's reasoning does not demonstrate that she applied either steps of the treating physician rule. The ALJ did not apply step one of the treating physician, and determine whether Dr. Merchant's RFC assessment was well-supported by medically acceptable clinical and laboratory diagnostic techniques, or whether it was consistent with other substantial evidence in the record. Nor does the decision reveal that that the ALJ applied any of the regulatory deference factors in her evaluation of Dr. Merchant's opinion. She merely concluded that the opinion should be rejected because it was based on Ms. Halford's subjective reports.

As explained above, the ALJ must conduct a sequential, two-step inquiry if she wishes to accord a treating physician's opinion less than "controlling weight." Further,

she must provide good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the treating physician's opinion. *Langley*, 373 F.3d at 1119 (quotation omitted). Here, the ALJ did not analyze Dr. Merchant's opinion pursuant to the treating physician rule. Further, as Ms. Halford points out, her conclusion that Dr. Merchant's opinion should be rejected for the reason it is only based on Ms. Halford's subjective reports is not corroborated by substantial evidence. The results of a radiograph taken of Ms. Halford's back was attached to Dr. Merchant's RFC assessment, and he also explained that Ms. Halford's x-rays and muscle spasms formed the basis of his assessment. The ALJ does not resolve the tension between her conclusion and the existence of objective medical evidence in the record that was relied upon by Dr. Merchant.

     The Commissioner alleges that the ALJ's finding that Ms. Halford was not credible satisfies the treating physician rule. The Commissioner is correct that the ALJ found Ms. Halford to be not credible as to her statements concerning the intensity, persistence, and limiting effects of her symptoms. (AR 15). However, the Commissioner's attempt to bolster the ALJ's analysis of Dr. Merchant's opinion by conflating it with her discussion of Mr. Halford's credibility is not sufficient. The Court has reviewed the entire decision, and the ALJ never made any direct correlation between the veracity of Dr. Merchant's opinion and Ms. Halford's statements to the ALJ about her symptoms. Therefore, the Court will not consider these arguments because it may only evaluate the ALJ's decision for the reasons stated therein. *See Robinson*, 366 F.3d at 1084.

The Commissioner also cites the Tenth Circuit's decision in *White v. Barnhart*, 287 F.3d 903 (10th Cir. 2001) for support. However, the ALJ's reasoning in this case differs greatly from the ALJ's decision in *White*. The ALJ in *White* rejected the claimant's treating physician's RFC assessment, noting gross discrepancies between the physician's very restrictive findings and contemporaneous examination of the claimant. *Id.* at 907. The ALJ in *White* also commented that the treating physician's assessments of the claimant's abilities had changed over the course of a year, even though there were no objective findings to support such change. *See id.* at 907–08 Further, the ALJ noted that the treating relationship had only begun the year after her application for benefits was initially denied, and that her motivation to seek treatment seemed to be in part because she needed the doctor to fill out a form necessary for her disability claim. *Id.* at 908. Thus, the Tenth Circuit concluded that the ALJ in *White* set forth specific and legitimate reasons for discounting the treating physician's opinion, in accordance with the Regulations. The ALJ in this case, however, entirely failed to do so.

The Commissioner further points out that Ms. Halford must show she was disabled prior to December 31, 2002 to succeed on her disability benefits claim, and after May 12, 2011 for her SSI claim, and therefore any evidence outside of those time periods is not relevant. (Doc. 19 at 4–5). However, evidence from a treating physician, even if dated outside the relevant disability periods, must be evaluated if there is evidence of actual disability during the relevant insured period. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir. 1990); *see also Andersen v. Astrue*, No. 05-4305, 319 Fed. Appx. 712, 722 (10th Cir. Dec. 29, 2009) (unpublished) ("The ALJ could make inferences about the progression of [the

13

claimant's] impairment relying on earlier medical evidence."). Again, the Court cannot find language in the decision that the ALJ rejected Dr. Merchant's opinion because he relied on evidence outside of the relevant disability periods. The Court may only evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible to engage in post-hoc rationalization. *Robinson*, 366 F.3d at 1084–85. Therefore, the Commissioner's justification cannot save the ALJ's decision.

The ALJ did not give sufficiently specific reasons for discounting Dr. Merchant's opinion when she applied the treating physician rule. Thus, the ALJ failed to evaluate his medical source opinion under the proper legal standards. The Court finds that the ALJ did not adequately consider Dr. Merchant's opinion, and erred by discounting that opinion when she made her RFC finding. Because the ALJ failed to apply the correct legal standards when she evaluated the opinion of Ms. Halford's's treating physician, the Court recommends that the case be remanded for further proceedings.

    3.    *Dr. Luciani: No Legal Error*

Ms. Halford also argues that the ALJ failed to properly evaluate the medical opinion of Dr. Luciani, a physician who allegedly treated her from March 8, 2001 through April, 2004. (AR 1188–89, 1206). On July 26, 2012, Dr. Luciani wrote that during the treatment period, Ms. Halford was disabled and "unable to sustain any appreciable activity and therefore unable to work" because therapy and other physical modalities failed to improve her overall condition. (AR 1206). The ALJ also discounted Dr. Luciani's opinion that Ms. Halford was disabled for the sole reason that it was based on Ms. Halford's subjective reports.

A medical source's judgment as to a claimant's disability is an opinion on an issue reserved to the Commissioner, and therefore not a "medical source opinion" to be considered pursuant to the Regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d)(1). While the ALJ must consider all of the medical findings and other evidence supporting a medical source's statement that a claimant is disabled, the final determination of disability is left to the Commissioner. *Id.*; *see also Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). Therefore, the ALJ need only consider the medical findings and other evidence supporting a determination of disability, but not the determination itself as a medical source opinion. Here, the only opinion at issue is a conclusory statement that Ms. Halford was unable to work, and the ALJ therefore need not analyze the opinion in accordance with the Regulations.

The Court may only consider whether the ALJ followed the specific rules of law in rejecting Dr. Luciani's opinion that Ms. Halford was disabled. Ms. Halford has failed to establish the ALJ committed reversible legal error, and the Court declines to find that any such error was committed.

### B.     Request for Immediate Award of Benefits

Ms. Halford requests that the Court reverse the decision of the Commissioner and remand the case for an immediate award of disability benefits. The decision of whether to remand a case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). To make this decision, the Court considers the length of time the matter has been pending and whether additional fact-finding would serve any

useful purpose or merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, the length of time this matter has been pending is not unusual for a case which has been evaluated by an ALJ and the Appeals Council once, especially where the case record is so voluminous that Ms. Halford's counsel spent three months preparing the Motion after the Court entered the initial briefing schedule. (*See* Doc. 15). Further, as discussed above, additional analysis and explanation by the ALJ is required. Under these circumstances, the Court will take heed not to assume the role of fact-finder and substitute its judgment for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

For all of the foregoing reasons, the facts of this case do not necessitate an immediate award of benefits at this time. The Court therefore recommends that Ms. Halford's request for an immediate award of benefits be denied.

V. **Conclusion**

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ did not apply the correct legal standards in considering Dr. Merchant's's opinion. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein. The Court does not decide any other issue raised by Ms. Halford on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that Ms. Halford's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative for Rehearing, with Supporting Memorandum*, (Doc. 17), be **GRANTED in part** and that this case be **REMANDED** to

the Commissioner for further proceedings consistent with this Proposed Findings and

Recommended Disposition.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE